IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00193-MSK-MEH

JULIE A. MCTWIGAN-EVANS, as Personal Representative of the Estate of Bill Evans,

       Plaintiff,

v.

KAREN SPAULDING,
BRIAN IVERS, and
THE CITY OF FORT COLLINS, a Colorado municipal corporation,

       Defendants.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE**

---

THIS MATTER comes before the Court on the Defendants' Motion for Summary Judgment (**#82**) and supporting brief (**#83**), to which the Plaintiff responded (**#97, #98**). Having considered the same, the Court finds and concludes as follows.

**I.  Jurisdiction**

For purposes of determining the pending motion, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**II. Issue Presented**

The Plaintiff, Julie A. McTwigan-Evans, asserts a single claim against the Defendants in her capacity as personal representative of the Estate of Bill Evans. She alleges that Defendants Karen Spaulding and Brian Ivers, both police officers working for the City of Fort Collins, entered into the apartment which she shared with Bill Evans on January 7, 2004, and that they

unreasonably fired gunshots at Mr. Evans.  She alleges that Mr. Evans died eleven months later as the result of his gunshot wounds.  Pursuant to this Court's Order Granting Motion to Dismiss (**#38**) issued May 30, 2006, the sole claim remaining in this action is the Plaintiff's claim under 42 U.S.C. § 1983 that Bill Evans' rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution were violated by the Defendants' conduct.

The Defendants move for summary judgment on the sole remaining claim.  They contend that they are unable to discern from the Complaint what specific civil rights violation is alleged.  However, they discern either a claim that the officers' entry into the apartment violated the decedent's Fourth Amendment rights, or that there was an excessive application of force.  The Defendants contend that the Plaintiff cannot produce sufficient competent evidence to support either violation.  The officers also assert an entitlement to qualified immunity.  In addition, Defendant City of Fort Collins contends that the Plaintiff cannot establish any municipal liability.

In response, the Plaintiff contends that there is evidence of two Fourth Amendment violations: Officer Ivers' warrantless entry into the apartment, and his subsequent use of excessive force against Mr. Evans.

The issue presented is whether a trial is required on the Plaintiff's claim.

### III.  Material Facts

Based upon the evidence submitted, which the Court construes most favorably to the Plaintiff, the Court finds for purposes of this motion that:

1.      On January 7, 2004, Bill Evans was drunk.  He threw a chair approximately six feet across the kitchen in the direction of the Plaintiff, Julie McTwigan-Evans.

2.      The chair struck Ms. McTwigan-Evans on the head.  She sustained a laceration on

the back of the head which caused her to bleed.

3.      Ms. McTwigan-Evans believes that Mr. Evans hit her by accident and did not intend to hurt her.

4.      Ms. McTwigan-Evans and Mr. Evans went into the bathroom, where Mr. Evans applied first aid.  They decided not to go to the hospital, because they agreed that Mr. Evans would probably be arrested.

5.      Mr. Evans then left the apartment.  While he was gone, Ed Duchene, who also lived in the apartment, arrived at the apartment.  He and Ms. McTwigan-Evans had a discussion about what had occurred between her and Mr. Evans.  Mr. Duchene later left the apartment.

6.      Mr. Duchene's wife, Kathy Duchene, did not live in the apartment.  However, she had learned about the incident and called 911 to report that Mr. Evans had hit Ms. McTwigan-Evans with a chair.  She reported that Mr. Evans is "very violent" and drunk, and asked the police to check on Ms. McTwigan-Evans.

7.      A pillow case with Ms. McTwigan-Evans' blood was on the kitchen table in full view of the kitchen window.

8.      Defendants Karen Spaulding and Brian Ivers, both officers with the City of Fort Collins Police Department, went to the apartment to check on Ms. McTwigan-Evans' welfare.  Officer Ivers knew this was a "domestic violence call" and knew such calls to be dangerous, based on his experience as a police officer.  While en route to the apartment, Officer Jaclyn Shaklee sent a message to Officer Ivers warning him that Mr. Evans "was known to possess knives" and "was probably violent[.]"

9.      Upon arriving at the apartment, Officer Ivers rang the doorbell several times, and

3

Officer Spaulding announced that they were police officers, but nobody answered the door. Officer Spaulding looked through the kitchen window, saw blood, and advised Officer Ivers.

10.     Officer Ivers then became concerned that an occupant of the apartment was injured or in danger.  He then called Sergeant Ziegler to discuss the need for a warrantless entry. After that discussion, Officer Ivers decided to enter the apartment, without a warrant, through the kitchen window.

11.     As Officer Ivers was stepping through the window, Mr. Evans asked him if he had a warrant.  Officer Ivers responded to Mr. Evans that he needed to come to the front door. According to Officer Ivers, Mr. Evans was partially hidden by a wall, yelled that he had a gun, and made a hand motion "as though he was racking the slide of a semi-automatic handgun[.]" Based upon this information, Officer Ivers believed that Mr. Evans had a gun and planned to fire it at Officer Ivers.

12.     Ms. McTwigan-Evans confirmed that she heard Mr. Evans tell the police, "locked and loaded."

13.     Officer Ivers then instructed Mr. Evans, several times, to put the gun down and tried to negotiate with him.  Mr. Evans did not comply.  Officer Ivers did not believe that he could safely retreat from his position in the window, because Mr. Evans would have a "clear shot" at him.

14.     At that moment, Mr. Evans came around the corner in a quick movement, bringing his hands up "as if he was going to shoot[.]" Officer Ivers then shot at Mr. Evans, and missed. Mr. Evans "retreated behind the wall and said something to the effect that he was going to obtain another weapon or reload and come back to shoot [Officer Ivers]."  Mr. Evans then reappeared

4

and rushed at Officer Ivers, who then shot Mr. Evans.

15.     After Officer Ivers shot Mr. Evans, he learned that Mr. Evans did not have a gun.

16.     After the shooting, Mr. Evans told Ms. McTwigan-Evans that "there was no way the officers could have known he didn't have a gun."

### IV.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See*

5

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v.*
*Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material
fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.
The court then applies the law to the undisputed facts and  enters judgment.

  If the moving party does not have the burden of proof at trial, it must point to an absence
of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.
If the respondent comes forward with sufficient competent evidence to establish a *prima facie*
claim or defense, a trial is required.  If the respondent fails to produce sufficient competent
evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of
law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V.  Analysis

  The Court begins with Officer Ivers' and Officer Spaulding's invocation of qualified
immunity.  Qualified immunity is a protection from trial and other burdens of litigation.  *See*
*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Jones v. Hunt*, 410 F.3d 1221, 1225
(10th Cir. 2005).  When facing a claim for civil damages under 42 U.S.C. § 1983, a police officer
is entitled to qualified immunity if his conduct did not violate a clearly established statutory or
constitutional right of which a reasonable officer would have known.  *See Wilson v. Layne,* 526
U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *Roska ex rel.*
*Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003).  The doctrine of qualified immunity
protects "all but the plainly incompetent or those who knowingly violate the law."  *See Roska*,
328 F.3d at 1251 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  No matter how tragic
the consequences of an officer's conduct, qualified immunity must be recognized if reasonable

officers could disagree as to the appropriateness of the course of action taken.  *See id.*   Ms. McTwigan-Evans bears the heavy burden of producing evidence that establishes that: (1) the officers violated a constitutional or statutory right; and (2) the right was clearly established at the time of their unlawful conduct.  *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).

Under this two-pronged test, the Court first determines whether a constitutional right was violated. This inquiry requires the Court to evaluate all facts in the light most favorable to Ms. McTwigan-Evans.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If Ms. McTwigan-Evans meets her burden under the first prong, then the Court determines whether the constitutional right was clearly established.  *See id.*  This inquiry is made in light of the specific context of the case, not as a broad general proposition.  *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*).  However, the particular officer's subjective understanding of the law is not pertinent to this analysis.  Whether the law was clearly established is essentially a legal question and is measured by an objective standard.  *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998). Although the Plaintiff is not required to identify a factually identical case to demonstrate that the constitutional right was clearly established, however, she should identify a Supreme Court or Tenth Circuit opinion on point, or demonstrate that the right is supported by the weight of authority from other courts.  *See Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir.), *cert. granted*, 127 S. Ct. 722 (2006).  With these standards in mind, the Court turns to the specific claim asserted.

Two Fourth Amendment violations are alleged: a warrantless search and seizure, and an excessive use of force.  As to the first alleged violation, Ms. McTwigan-Evans must produce

evidence that there was a warrantless search or seizure, and a warrant was required.[1]  A warrant is

not required when police "have an objectively reasonable basis for believing that an occupant is

seriously injured or imminently threatened with such injury."  *West v. Keef*, 479 F.3d 757, 759

(10th Cir. 2007).

In addition, the use of excessive force violates the Fourth Amendment.  *See Brosseau*, 543

U.S. at 198-99.  Whether the use of force was excessive in a particular case requires the Court to

consider the totality of the circumstances to determine whether the force used was objectively

unreasonable.  *See Jiron v. City of Lakewood*, 392 F.3d 410, 414-15 (10th Cir. 2004).  In this

analysis, several non-exclusive factors are considered – the severity of the crime at issue, whether

the suspect posed an immediate risk of harm to an officer or another person, whether the suspect

was evading arrest, and whether the officer's own conduct created the need to use any force.  *See

id.*  The reasonableness of an officer's actions is evaluated "from the on-scene perspective, not

with the advantage of 20/20 hindsight."  *See id.* at 418; *see also Saucier*, 533 U.S. at 205.

Construing the evidence in a light most favorable to Ms. McTwigan-Evans, she has not

produced sufficient, competent evidence to show that a warrant was required for Officer Ivers to

enter the apartment.  To the contrary, the evidence is unrebutted that when Officer Ivers entered

---

[1] Citing several criminal cases, the Plaintiff suggests that the burden should fall on the Defendants to prove that no warrant was required, and that the exclusionary rule should be applied to exclude evidence at trial of the allegedly unlawful entry.  However, this is not a criminal case.  Here, the Plaintiff seeks to impose civil liability against the Defendants for Officer Ivers' entry into her apartment.  Under Fed. R. Civ. P. 11(b)(3), the Plaintiff cannot claim a Fourth Amendment violation unless she has evidentiary support for such a claim.  In other words, she must possess some evidence that a warrant was required for the search. The Court will not presume that a trial is required simply because there was a warrantless search.  Such presumption would be wholly inconsistent with the heavy burden which a plaintiff bears to demonstrate that a defendant is not entitled to qualified immunity.

Notwithstanding the same, the Court notes that it is the Defendants who produced evidence that there were exigent circumstances to justify Officer Ivers' warrantless entry into the apartment.  Ms. McTwigan-Evans has, in response, produced no evidence to rebut the presence of exigent circumstances.

the apartment, he believed, based upon all of the objective information known to him – including the blood in the apartment, the substance of the 911 telephone call, and the warning from Officer Shaklee – that an occupant of the apartment was injured or in danger.  Ms. McTwigan-Evans has made no showing that this belief was objectively unreasonable.

Ms. McTwigan-Evans has also failed to produce sufficient, competent evidence that the use of force by Officer Ivers was objectively unreasonable.  Indeed, the unrebutted evidence shows that Mr. Evans told Officer Ivers that he had a gun, and that Officer Ivers believed, based upon Mr. Evans' conduct, that this was true.  The unrebutted evidence also shows that Officer Ivers attempted to use measures short of firing his weapon in order to defuse the situation, but Mr. Evans continued to act as though he had a gun which he intended to fire at Officer Ivers. When Officer Ivers decided to shoot Mr. Evans, Officer Ivers was located in the window and did not believe he could safely retreat, and Mr. Evans was rushing at him.  Even Ms. McTwigan-Evans stated during her deposition that Mr. Evans told her that there was no way Officer Ivers could have known that he was not armed.  In short, Ms. McTwigan-Evans has made absolutely no showing that the use of force by Officer Ivers was unreasonable.

Because Ms. McTwigan-Evans has failed to produce sufficient, competent evidence that either of the officers violated Mr. Evans' constitutional rights, both officers are entitled to qualified immunity.  In addition, with regard to the claim against the City of Fort Collins, there can be no municipal liability without a predicate constitutional violation by an individual officer. *See Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1154 (10th Cir. 2001).  Therefore, Ms. McTwigan-Evans cannot prevail on a claim against the City.

**IT IS THEREFORE ORDERED** that the Defendants' Motion for Summary Judgment

(#82) is **GRANTED**.  Judgment shall enter in favor of the Defendants and against the Plaintiff.

The Clerk of Court is directed to close this case.

     Dated this 12th day of April, 2007

**BY THE COURT:**

Marcia S. Krieger
United States District Judge